UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**SAROJBEN RAJESHKUMAR PATEL**                                      **PETITIONER**

v.                                                                                No. 4:26-cv-5-BJB

**JASON WOOSLEY, ET AL.**                                               **RESPONDENTS**

\* \* \* \* \*

**OPINION & ORDER**

  Sarojben Rajeshkumar Patel, an Indian citizen, entered the United States without permission more than two years ago. Petition (DN 1) ¶ 19. And Patel has lived here since, under a prior Department of Homeland Security policy allowing—but not requiring—the detention of people who entered illegally and reside inside the country. No argument for lawful status in the United States, however, appears in the Petitioner's filings.

  Recently, the Acting Director of Immigration and Customs Enforcement changed the agency's policy: ICE now considers Patel, and others similarly situated, subject to mandatory detention under 8 U.S.C. § 1225(b)(2) rather than permissive detention under § 1226(a). *See* USA Response (DN 11) at 2.[1] Under the new policy, immigration officers arrested Patel. *See* Petition ¶¶ 20–21. And Patel has spent the past few months in Grayson County Jail while removal proceedings play out.

  Like many other immigration detainees who have sought habeas in recent months, Patel asserts that no statute grants—and the Constitution forbids—detention authority without bond. Unlike some other detainees, however, Patel adds an additional theory: another judge has already ruled that detention without bond is unlawful for a class that Patel belongs to. *See* Petition ¶ 5. The decision in question is *Bautista v. Santacruz*, --- F. Supp. 3d ---, No. 5:25-cv-1873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). It certified a nationwide class consisting of:

---

[1] *See also* Maria Sacchetti & Carol D. Leonnig, *ICE Declares Millions of Undocumented Immigrations Ineligible for Bond Hearings*, WASH. POST (July 15, 2025); *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AM. IMMIGR. LAWYERS' ASS'N, Doc. No. 25071607 (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (supplying an apparently genuine copy of the policy memo in question, which doesn't appear to be available on ICE's website or in the Federal Register).

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c)[2], § 1225(b)(1)[3], or § 1231[4] at the time the Department of Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3713987, at *32. The district judge entered this declaratory judgment against numerous federal defendants—all agencies or the heads of agencies involved in immigration enforcement, including three of the Respondents in these cases: Todd Lyons (the Acting Director of ICE), Kristi Noem (the Secretary of Homeland Security), and Pamela Bondi (the Attorney General).[5]

Those defendants opposed class certification and the declaratory judgment in the California litigation, and have—as respondents in other cases pending in this district—opposed habeas relief on similar grounds.[6] Yet the *Bautista* court has by now entered a final judgment "that the DHS policy is unlawful"—because, among other things, the judge interpreted it to "violat[e] Petitioners' … statutory and constitutional rights." *Id.* at *31, *28. Contrary to the Acting Director's policy memo, the court declared that "§ 1226(a) is the appropriate governing authority over Petitioners' detention," *id.* at *10, meaning that members of the nationwide class (which would include the Petitioner in this case) could not be detained without a bond hearing. Given that interpretation of the immigration statutes, moreover, the district court purported to vacate the new DHS policy. *Id.* at *31–32.

Patel now asks this Court to, in effect, enforce the California class judgment against the federal Respondents by preventing them from relying on their contrary interpretation of §§ 1225 and 1226 to justify pre-removal detention without bond.

---

[2] All parties agree that § 1226(c) requires detention of several categories of aliens who have committed specified criminal offenses.

[3] Section 1225(b)(1) provides that, in general, aliens who were neither admitted nor paroled and have been in the country for less than two years are subject to expedited removal.

[4] Sections 1231 commands the Attorney General to detain an alien after a removal order, § 1231(a)(2)(A), and either "remove the alien from the United States within a period of 90 days," §1231(a)(1)(A), or evaluate the alien for release under a supervision order, §§ 1231(a)(3), (a)(6).

[5] Named defendants in the California class-action litigation include the Department of Homeland Security, the Executive Office for Immigration Review, Immigration and Customs Enforcement, the Acting Director of Immigration and Customs Enforcement, the Secretary of Homeland Security, and the Attorney General.

[6] For reasons unknown, the Government's return in this case did not address the Petitioner's *Bautista* argument.

2

The Government's principal and arguably sole reason for detaining Patel, the petition emphasizes, is its since-rejected interpretation of § 1225 to mandate detention. And now the Government is bound by a valid judgment, benefiting all class members, that precludes it from relying on that reason.

In other cases before this Court, federal Respondents have countered that the *Bautista* decision lacks preclusive effect in Kentucky federal-court habeas litigation. In those other cases, the Government has offered a host of arguments, marching under two main banners.

First, the Government has attacked the legality of a single court's declaratory judgment that would bind the entirety of the nation's immigration apparatus, freeze the development of the law, and perhaps effectively deliver habeas relief to a nationwide class of immigrants despite Supreme Court caselaw limiting such suits to the jurisdiction of confinement. *See generally Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

Second, the Government has questioned the preclusive effect of the *Bautista* judgment outside the Central District of California. Yet in those other cases, the Government hasn't yet offered a reason for this Court—as opposed to an appellate court—to relieve the Government of the binding nature of a final judgment. Longstanding federal law concerning the preclusive effect of judgments—rightly or wrongly—sharply limits one judge's authority to question the force or accuracy of another judge's judgment. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981).

The Government's attacks on the *Bautista* judgment may well be correct. That court acknowledged that affording "*habeas relief* on a nationwide level" might offend *Padilla*'s district-of-confinement rule. *Bautista*, 2025 WL 3713987, at *14. And several statutory provisions limit trial judges' equitable authority to interfere with immigration and removal proceedings under the guise of habeas. *See, e.g., id.* at *27 (discussing 8 U.S.C. §§ 1252(e)(1)(A) and 1252(f)(1)); *id.* at *23 (discussing §§ 1252(e)(1)(B) and 1252(e)(3)(A)). Undoubtedly wary of these limitations, the *Bautista* court didn't grant habeas relief (at least not *per se* habeas relief) or even enter any sort of injunction against the federal immigration officials, *see* § 1252(f)(1). Yet its declaratory judgment came as close as one could reasonably imagine to effectively ordering such relief, given the statutory limits Congress carefully enacted on courts' remedial authorities. *Cf. Khalil v. President of the United States*, --- F.4th ---, 2026 WL 111933, at *9 (3d Cir. 2026) (describing the "channeling scheme" that Congress created to reduce "piecemeal litigation" in this area). A nationwide, non-habeas habeas class surely distorts Congress' determination that "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Padilla*, 542

3

U.S. at 442 (quoting 28 U.S.C. § 2241(a)); *see also id.* at 443 ("[A]n 'application for a writ of habeas corpus must be made to *the* appropriate district court.'") (quoting FED. R. APP. P. 22(a)).

But the Government's jurisdictional attack overlooks an important aspect of the federal law of preclusion: "The principles of res judicata apply to questions of jurisdiction as well as to other issues." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939). A jurisdictionally defective judgment *is* susceptible to collateral attack if no one noticed the jurisdictional defect in the first forum. But, at least according to aged but binding rulings of the Supreme Court, if a jurisdictional question was itself "fully and fairly litigated by the parties and finally determined in" the rendering forum, then that question isn't subject to collateral attack in a second forum. *Durfee v. Duke*, 375 U.S. 106, 116 (1963).

The Government has also urged that the nationwide class declaration should be treated as a "legal nullity." Although the Government never quite says as much, it has strongly implied that the class certification—at least as extended and exploited here—contradicts the Supreme Court's recent rejection of nationwide injunctions. *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025). But part of the reason the Supreme Court rejected universal injunctions was because they "are a class-action workaround." *Id.* at 850.

So the question before the Court—and the Government, should it seek to continue detaining the Petitioner—is neither the lawfulness nor the wisdom of the *Bautista* judgment. It is instead whether *Bautista* is indeed a judgment imbued with preclusive power—and what if any reasons beyond those the Central District considered and rejected justify the Petitioner's detention as against habeas petitions asserted in the district of confinement.

And in this case, the Government hasn't offered any response at all to the Petitioner's *Bautista* argument.

Of course, if the Government has some *other* lawful reason for detention beyond the mandatory-detention argument from § 1225(b)(2), then it may offer it—and continue to detain the Petitioner if it can show lawful authority to do so. *See Boumediene v. Bush*, 553 U.S. 723, 740–41 (2008) ("[B]y issuing the writ of habeas corpus common-law courts … inquire into the authority of a jailer to hold a prisoner."); 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION § 1333 ("[I]f no sufficient ground of detention appears, the party is entitled to his immediate discharge.").

But so far, given the *Bautista* judgment about the scope of § 1225(b)(2), and the return the Government has made in this case, release seems warranted. So if the

Government has any other reason to confine the Petitioner, or additional reasons to doubt the preclusive effect of *Bautista*, it must offer it promptly.

## ORDER

In response to the parties' agreement to waive the hearing and submit this case for a decision based on the briefs, the Court modifies their proposed briefing schedule to give both parties an opportunity to respond to this opinion and order. The Government must file any supplemental response to this order no later than February 12, 2026. The Petitioner may file a response to the Government's brief no later than February 19, 2026.

If the Government does not offer other lawful reasons to detain the Petitioner, or a reason that *Bautista* does not preclude it from advancing the reasons it has relied on so far, the Court will order the Petitioner's release for lack of a lawful reason to detain. Mindful that Patel deserves a "just" and "speedy" determination of this petition, *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 271 (1978) (citing FED. R. CIV. P. 1), and of the many other habeas petitions raising similarly complex arguments, the Court denies without prejudice Patel's two motions to expedite (DNs 16 & 19). *See id.* ("[T]he emphasis in the Federal Rules of Civil Procedure on 'just' and 'speedy' adjudication parallels the ideal of 'a swift, flexible, and summary determination' of a habeas corpus petitioner's claim.") (citations omitted). Patel filed these twin motions two weeks after the parties agreed to waive a hearing, *see* DN 13, and the compressed briefing schedule set forth above should promote the prompt adjudication of this and other petitions.